UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| DANIELLE PECK, individually and on behalf of a class of others similarly situated, )<br><br>Plaintiff, )<br><br>vs. )<br><br>MERCY HEALTH, MERCY HEALTH FOUNDATION, and MHM SUPPORT SERVICES, )<br><br>Defendants. ) | No. 4:21CV834 RLW |

## MEMORANDUM AND ORDER

This matter is before the Court on Plaintiff's Motion for Conditional Collective Certification and Court-Supervised Notice to Potential Opt-In Plaintiffs Pursuant to 29 U.S.C. § 216(b) (ECF No. 37). This Motion is fully briefed and ready for disposition. The Court grants Plaintiff's Motion, in part, and allows conditional collective certification.

## BACKGROUND

Mercy is a health system, with locations in Missouri, Oklahoma, Arkansas, and Kansas. Plaintiff Danielle Peck ("Plaintiff") contends that Defendants are joint employers and responsible for the policy that automatically resulted in employees not receiving their full compensation. Defendants have a policy whereby 30 minutes is automatically deducted as a "meal break" from the employees' time worked for each shift. Plaintiff argues that employees often worked through their shifts, without taking "bona fide meal breaks." Plaintiff acknowledges that employees sometimes had their automatically-deducted pay restored. However, Plaintiff contends that the "de facto policy and practice [was] that time should be deducted regardless of whether hourly-paid

– 1 –

workers worked through their purported meal breaks." (ECF No. 37-1 at 12). Plaintiff seeks the following relief:

(1) Conditionally certifying a Fair Labor Standards Act ("FLSA") Collective, defined as:

All hourly-paid employees of the Defendants who were or are subject to the automatic meal break deduction policies at any time on or after three (3) years prior to the date on which the Court approves the collective certification (the "Collective");

(2) Directing Defendants to identify all putative members of the Collective by providing their names, last known addresses, dates and locations of employment, job titles, phone numbers, and e-mail addresses, in an electronic and importable format, such as an unrestricted Excel spreadsheet, within fourteen (14) calendar days of the entry of this Order;

(3) Approving Plaintiff's proposed "Notice of Right to Join Lawsuit" and "Consent to Join Lawsuit" Form (Exhibit A) and proposed language of the email and text message (Exhibits B-C) to be sent to the putative members of the Collective;

(4) Authorizing Plaintiff's Counsel to direct a claims administrator to maintain a case website displaying the text of the approved "Notice of Right to Joint Lawsuit" and "Consent to Joint Lawsuit" forms, through which members of the Collective may sign their Consent to Join forms electronically;

(5) Authorizing Plaintiff's counsel to disseminate the approved notice to the putative members of the Collective via U.S. Mail, e-mail and text message, and to send a reminder notice via e-mail and text message halfway through the notice period; and

(6) Affording the putative members of the Collective sixty (60) days from the date the notice is issued to join this case by completing either paper or electronic consent forms.

(ECF No. 37).

**DISCUSSION**

**A. Plaintiff's Allegations**

The FLSA provides that "[a]ny employer who violates the provisions of … section 207 of this title shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages." 29 U.S.C. §219(b). An action to recover such damages may be maintained "by any one or more employees for and on behalf of himself or themselves and other employees similarly situated." *Id.*; *Kayser v. Sw. Bell Tel. Co.*, 912 F. Supp. 2d 803, 811 (E.D. Mo. 2012).

As stated, Plaintiff alleges that she meets the standard for conditional certification because the hourly-paid workers were subject to Defendants' company-wide policy and practice, which automatically deducted at least thirty (30) minutes of pay for a "meal break" that the employees did not take. Multiple workers provided declarations to support these alleged violations. (ECF Nos. 37-5 – 37-18). As of the time of the filing of the Motion for Conditional Class Certification, 14 opt-in Plaintiffs—eleven in Missouri, two in Arkansas, and one in Oklahoma—had filed written consent forms. (ECF Nos. 25-27, 3-32).

**B. The Two-Step Process for Collective Actions**

District courts within the Eighth Circuit conduct a two-step analysis to determine whether employees are "similarly situated" under § 216. *Beasley v. GC Services LP*, 270 F.R.D. 442, 444 (E.D. Mo. 2010); *Littlefield v. Dealer Warranty Services, LLC*, 679 F.Supp.2d 1014, 1016 (E.D. Mo. 2010); *Ford v. Townsends of Ark., Inc.*, No. 4:08CV00509BSM, 2010 WL 1433455, at *3 (E.D. Ark. Apr. 9, 2010). Under the two-step process, plaintiffs first seek conditional certification, and if granted, the defendant may later move for decertification after the opt-in period

has closed and all discovery is complete. *Kayser v. Sw. Bell Tel. Co.*, 912 F. Supp. 2d 803, 812 (E.D. Mo. 2012); *Davis v. NovaStar Mortg., Inc.,* 408 F.Supp. 2d 811, 815 (W.D. Mo. 2005). The motion for conditional certification is usually filed before any significant discovery has taken place. *Id*. The plaintiffs' burden at this first stage is typically not onerous. *Id*. Conditional certification at the notice stage requires "nothing more than substantial allegations that the putative class members were together the victims of a single decision, policy or plan." *Id.*; *see also Kautsch v. Premier Commc'ns*, 504 F.Supp. 2d 685, 689 (W.D. Mo. 2007); *Ford*, 2010 WL 1433455, at *3 ("A class is similarly situated at this stage if plaintiffs make a modest factual showing, based upon the pleadings and affidavits, that the proposed class members were victims of a single decision, policy, or plan."); *Dernovish v. AT&T Operations, Inc.*, No. 09-0015CVWODS, 2010 WL 143692, at *1 (W.D. Mo. Jan. 12, 2010) ("There is no need to show that the would-be members of the class are actually similarly situated or that they are identical, but the plaintiff must present some evidence to demonstrate the class members are similar in important respects and are subjected to similar policies or circumstances."). A plaintiff may meet this burden by "detailed allegations supported by affidavits." *Kautsch*, 504 F.Supp. 2d at 689 (citation omitted). The Court does not reach the merits of the plaintiffs' claims at this early stage of litigation. *Fast v. Applebee's Int'l, Inc.*, 243 F.R.D. 360, 363 (W.D. Mo. 2007). If the Court conditionally certifies the class, the potential class members are given notice and the opportunity to opt-in. *Dernovish*, 2010 WL 143692, at *1.

The second step is the "merits stage" and occurs when the defendant moves to decertify the class. *Ezell v. Acosta, Inc.*, No. 4:16CV870 RLW, 2018 WL 3763834, at *3 (E.D. Mo. Aug. 8, 2018); *Beasley*, 270 F.R.D. at 444; *Dernovish*, at *1 (W.D. Mo. Jan. 12, 2010). Typically this occurs after the close of discovery, when the Court has more information and is able to make a

more informed decision. *Dernovish*, 2010 WL 143692, at *1. "[The] Court does not need to determine whether class members are *actually* similarly situated until the 'merits stage' of the litigation, when defendants typically move to decertify the class." *Bilskey v. Bluff City Ice, Inc.*, No. 1:13-CV-62 SNLJ, 2014 WL 320568, at *2 (E.D. Mo. Jan. 29, 2014). "Applying a stricter standard, the court at the second step makes a factual determination on the similarly situated question." *Wilson v. PNK (River City), LLC*, No. 4:15CV00380 AGF, 2015 WL 5098716, at *2 (E.D. Mo. Aug. 31, 2015); *Garner v. Regis Corp.*, No. 03-5037-CV-SW-SWH, 2004 WL 5455905, at *2 (W.D. Mo. Aug. 5, 2004)(citation omitted).

### C. Similarly Situated

Although the term "similarly situated" is not defined by the FLSA, it "typically requires a showing that an employer's commonly applied decision, policy, or plan similarly affects the potential class members, and inflicts a common injury on plaintiffs and the putative class." *Keef v. M.A. Mortenson Co.*, No. 07–cv–3915 (JMR/FLN), 2008 WL 3166302, at *2 (D. Minn. Aug. 4, 2008) (citation and quotation omitted); *Hussein v. Cap. Bldg. Servs. Grp., Inc.*, 152 F. Supp. 3d 1182, 1191 (D. Minn. 2015). Determining whether Plaintiff's showing meets this standard "lies within the Court's sound discretion." *Id*. According to Plaintiff, all 14 opt-in Plaintiffs who submitted declarations in support of conditional certification "suffered the same malady of working through meal breaks but not having their automatically deducted pay restored, demonstrating a companywide scheme and the existence of a collective whose members are similarly situated." (ECF No. 53 at 3). Plaintiff argues that a "de facto and systemic policy" existed to "deprive[] Plaintiffs of wages and require[] them to plead for pay to be restored using unreliable processes with no audit trail." (*Id*.)

In sum, Plaintiff contends "all members of the collective were employed by Defendants, were subjected to the identical automatic meal break deduction policy in which at least 30 minutes' pay was deducted per day regardless of whether they took a meal break or not, and performed uncompensated work during the automatically deducted meal break due to the demanding and unpredictable nature of providing patient healthcare." (ECF No. 53 at 16). That is, "[t]he unifying factors that lead to order are employees holding various positions and working in various locations are all subject to the soulless automatic chopping away of their time for a meal break that the company concedes was challenging to schedule due to the chaotic nature of the work." (ECF No. 53 at 28); *see also* ECF No. 62 at 5 ("This is an opportunity to address an injustice plaguing health care working in which Mercy refuses to listen to the pleas of the twenty-seven (27) workers and counting who endure soulless machinery consistently swiping a half-hour of pay each day from them, and labyrinthine, inconsistent restoration processes that will leave them without the ability to redress if they don't receive Notice and the ability to be heard.").

"District courts often conditionally certify FLSA classes when presented with allegations that supervisors are in practice discouraging employees from correcting their time records or wrongfully refusing to correct employees' time records." *Miller v. MV Transportation, Inc.*, 331 F.R.D. 104, 112 (W.D. Tex. 2019) (citing *Hamm v. S. Ohio Med. Ctr.*, 275 F. Supp. 3d 863, 877 (S.D. Ohio 2017) (conditionally certifying a class where the employer's "enforcement of its automatic meal deduction policy has violated the FLSA by causing Plaintiff and other potential class members to work hours for which they were not compensated"); *Myers v. Marietta Mem'l Hosp.*, 201 F. Supp. 3d 884, 895 (S.D. Ohio 2016) (conditionally certifying a class where plaintiffs alleged "that they and other workers were often unable to take meal breaks and were discouraged from canceling the automatic deduction when they could not take a break"); *Lindberg v. UHS of*

*Lakeside, LLC*, 761 F. Supp. 2d 752, 761 (W.D. Tenn. 2011) (conditionally certifying a class where plaintiffs alleged that management knew they were working through meal breaks but "routinely discouraged employees from utilizing the time adjustment forms"). The Court finds that plaintiff has alleged that the meal break policy similarly affects the potential collective members, making them similarly situated for purposes of conditional collective certification.

### D.  Uniform Policy

As stated, the FLSA allows named plaintiffs to sue "for and in behalf of ... themselves and other employees similarly situated." 29 U.S.C. § 216(b).  "Plaintiffs may be similarly situated when they suffer from a single, FLSA-violating policy, and when proof of that policy or of conduct in conformity with that policy proves a violation as to all the plaintiffs." *Bouaphakeo v. Tyson Foods, Inc.*, 765 F.3d 791, 796 (8th Cir. 2014)(internal citation omitted). "A court may consider '(1) disparate factual and employment settings of the individual plaintiffs; (2) the various defenses available to defendant which appear to be individual to each plaintiff; [and] (3) fairness and procedural considerations.'" *Bouaphakeo*, 765 F.3d at 796 (citing *Thiessen v. Gen. Elec. Capital Corp.,* 267 F.3d 1095, 1103 (10th Cir. 2001)).  "While Plaintiffs' burden is not onerous, Plaintiffs must assert substantial allegations that the putative class members were the victims of a single decision, policy or plan." *Andrews v. Appletree Answering Serv.*, No. 4:11 CV 2227 RWS, 2012 WL 2339322, at *3 (E.D. Mo. June 19, 2012).

Plaintiff contends that she has provided "substantial evidence beyond what is required at this stage that the workers of Mercy were all victims of Defendants' time chopping scheme." (ECF No. 53 at 28).   Plaintiff later tempers her statement, claiming that "[t]he violation is not that the workers were never able to take a meal break—it's that meal break time was deducted regardless of whether workers actually took the break, and pay was commonly not restored for

breaks that weren't taken." (ECF No. 62 at 2); *see also* ECF No. 62-5 ("All deponents testified to Mercy's *de facto* policy in which they were frequently unable to take bona fide meal breaks but had work time automatically deducted.").

Plaintiff provided testimony indicating that, "[i]n contrast to the written policy, hourly-paid employees subject to the automatic meal break deduction are drowning in a work culture where they rarely can take a 30-minute break." (ECF No. 53 at 9). Plaintiff further argues that her automatically-deducted pay was not often or regularly restored, arguing that Defendants relied on "soulless automation to chop away workers' time and hiding behind the bureaucracy of labyrinthine mechanisms to stifle the restoration of worked time." (ECF No. 53 at 9). Plaintiff provided statements from various named Plaintiffs stating that they had not been paid for mandatory meal breaks. Plaintiff Watson claimed she was unaware as to how to cancel her meal break deduction, even after she complained to her manager. (ECF No. 53 at 10). Plaintiff McKinzie claimed she was aware of a function to unilaterally cancel the automatic deduction, but she was instructed by her supervisors not to use it. (ECF No. 53 at 10). Plaintiff Rosikhina claims she knew how to cancel the automatic deduction and how to submit a meal break exception form, but faced arbitrary and unwritten rules that frequently prevented her from receiving pay for meal breaks she did not take. (ECF No. 53 at 10-11). For example, she was not allowed to use the deduction cancellation during her regular shifts, only during her on call weekends. (*Id.*) Likewise, Rosikhina claims that workers in her department were only allowed to claim payment for their unused meal break if "no one 'offered' them a meal break." (*Id.*) Plaintiff Peck claims that her nurse manager Chambless instructed that there would be "repercussions" if Peck utilized the cancel meal break deduction function on the time clock to restore her meal break time. (ECF

No. 53 at 11).¹ Likewise assistant nurse manager Carol Beecher sent an email discouraging Peck from cancelling her automatic meal deduction, which should only be used on "rare occasions." (ECF No. 13 at 12). Beecher wrote that it was Mercy's goal for everyone to be able to leave their desk for a 20-30 minute meal break. (*Id.*)² In sum, Plaintiffs allege that their supervisors had knowledge that the regular 30-minute meal breaks were not being taken, despite the automatic deduction. (ECF No. 53 at 12-14).³

In response, Defendants note that Plaintiff requests conditional certification of a collective that includes 30,000 non-exempt Mercy employees, with 1,663 different job titles, and work in more than 2,300 different departments. (ECF No. 47 at 1; ECF No. 47-1, ¶ 4). Defendants provide evidence that there was not a uniform policy to deprive employees of pay due to mandatory, unused meal breaks. Indeed, eight of the fourteen declarations provided by Plaintiffs state that they had meal breaks restored at times. *See* ECF No. 37-5, Peck Decl., ¶ 19 ("There were times in which I had my shorted pay restored"); ECF No. 37-8, Papin Decl., ¶ 19 (same); ECF No. 37-12, Louie Decl., ¶ 19 (same); ECF No. 37-13, Arman Decl., ¶ 19 (same); ECF No.

---

¹ Plaintiff Peck testified that she worked as a Unit Registration Representative on the night shift in the Labor and Delivery department at Mercy's hospital in Oklahoma City, Oklahoma. (ECF No. 47 at 4).
² From this email, Plaintiff extrapolates that "[w]ritten supervisory guidance countermanding a 30-minute lunch with supplanting instructions that an acceptable meal break can be anywhere from 20-30 minutes is chaos." (ECF No. 53 at 27).
3 "[S]igned declarations or affidavits provide appropriate support for motions to conditionally certify a class." *Stouder v. Turblex, Inc.*, No. 10-3069-CV-S-DW, 2010 WL 11619552, at *2 (W.D. Mo. Aug. 31, 2010); *Robertson v. LTS Mgmt. Servs. LLC*, 642 F.Supp.2d 922, 926 (W.D. Mo. 2008) (rejecting the defendant's argument that five affidavits did not prove the plaintiffs were similarly situated because they were all "conclusory and contain[ed] the same information"); *Frazier v. PJ Iowa, L.C.*, 337 F. Supp. 3d 848, 865 (S.D. Iowa 2018).

37-14, Conley Decl., ¶ 23 (same); ECF No. 37-16, Rosikhina Decl., ¶ 19 (same); ECF No. 37-17, Burns Decl., ¶ 19 (same); and ECF No. 37-18, Cornish Decl., ¶ 19 (same).

As noted by another district court, "Courts have granted conditional class certification to similar classes of hospital employees who work in direct patient care, including registered nurses, licensed practical nurses, and nurses' aides." *Myers*, 201 F. Supp. 3d at 895–96 (citing *Bergman v. Kindred Healthcare, Inc.*, 949 F.Supp.2d 852, 860 (N.D. Ill. 2013) (granting conditional certification to "nurses and hospital employees who are engaged in the direct care of patients" and noting that "[t]he nature of their interrupted meal breaks was affected by the demands of patient care"); *Colozzi v. St. Joseph's Hosp. Health Ctr.*, 595 F.Supp.2d 200, 211 (N.D.N.Y. 2009) (granting conditional certification of a class of a hospital's hourly employees "including but not limited to registered nurses, licensed practical nurses, nurse practitioners, and certified nurses' assistants, with direct patient care responsibilities who have been subject to automatic meal break deductions"); *Fengler v. Crouse Health Foundation, Inc.*, 595 F.Supp.2d 189, 191 (N.D. N.Y. 2009) (granting certification to a collective action of "current and former hourly employees with direct patient care responsibilities working at Crouse Hospital").

This Court "agrees with the findings of many other courts that a class of direct patient care employees subject to automatic meal break deductions is adequately defined for purposes of conditional certification. Because the key inquiry here is whether the plaintiffs suffer from a policy that violates the FLSA—the automatic meal break deduction—and whether the employer's policy is a violation as to all plaintiffs, Plaintiff has met her burden by showing that the meal break policy applies to this group of direct patient care employees and alleging that they and other workers were often unable to take meal breaks and were discouraged from canceling the automatic deduction

– 10 –

when they could not take a break." *Myers*, 201 F. Supp. 3d at 895 (citing *O'Brien v. Ed Donnelly Enterprises, Inc.*, 575 F.3d 567, 585 (6th Cir. 2009) (holding that plaintiffs were similarly situated because they "articulated two common means by which they were allegedly cheated: forcing employees to work off the clock and improperly editing time-sheets"); *Murton v. Measurecomp, LLC*, No. 1:07–CV–3127, 2008 WL 5725631, at *4 (N.D. Ohio June 9, 2008) ("[A] court may deny a plaintiff's right to proceed collectively only if the action arises from circumstances purely personal to the plaintiff, and not from any generally applicable rule, policy, or practice" (quotation marks and citation omitted).); *Bernal v. Vankar Enters., Inc.*, No. SA–07–CA–695–XR, 2008 WL 791963, at *4 (W.D. Tex. Mar. 24, 2008) ("Plaintiff's allegation that participation in the invalid tip pool was mandatory for all Defendants' bartenders is sufficient to meet the lenient standard for conditional certification.")). The Court holds that Plaintiff has provided sufficient evidence that there was a company-wide environment wherein employees routinely could not schedule or take uninterrupted meal breaks, yet had 30 minutes of pay deducted. *See Chin v. Tile Shop, LLC*, 57 F. Supp. 3d 1075, 1082 (D. Minn. 2014) (citing *Frank v. Gold'n Plump Poultry, Inc.,* No. 04–cv–1018 (JNE/RLE), 2005 WL 2240336, at *2 (D. Minn. Sept. 14, 2005) ("the Court must only determine whether Plaintiff has come forward with evidence establishing a colorable basis that the putative class members are victims of a single decision, policy, or plan"); *Myers*, 201 F. Supp. 3d at 891 ("And a balancing of Plaintiffs' and Defendants' competing affidavits would require credibility and factual determinations and is thus improper at this time."). Given the low standard at this stage, the Court finds that Plaintiff has sufficiently alleged and supported her claim that Mercy employed an unlawful policy that affected the proposed collective.

### E.  Vague and Unsupported Allegations

Defendants argue that Plaintiff cannot meet her burden of proof, particularly regarding knowledge of a company-wide policy.  Defendants claim that named Plaintiff Peck, and plaintiffs Rosikhina and McKinzie, all acknowledged they did not have information regarding whether other employees were properly paid. (ECF No. 47 at 27); *see also Evans v. Cont. Callers, Inc.*, No. 4:10CV2358 FRB, 2012 WL 234653, at *5 (E.D. Mo. Jan. 25, 2012) ("plaintiff's bare assertion that CCI should have known that its employees were not taking lunch breaks, with nothing more, is insufficient to constitute evidence that CCI engaged in a systematic policy of violating the FLSA with regard to its mealtime deduction").

The Court, however, finds that Plaintiff has made a sufficient demonstration that she and other putative Plaintiffs were aware of others improperly paid. *See Myers*, 201 F. Supp. 3d at 893 ("Nevertheless, even if the Court were to find that it was not appropriate to consider inadmissible evidence in deciding a motion for conditional certification, the Court finds that many of the relevant statements in Plaintiffs' affidavits are based on their personal knowledge and are thus admissible under Federal Rule of Civil Procedure.").  Indeed, "[e]ach Plaintiff who was deposed and all fourteen (14) declarants stated that they complained to management about the deduction and inability to take a meal break or to restore the time. Plaintiffs were observed by charge nurses and other present supervisory leaders whose job duties included ensuring that employees received meal breaks." (ECF No. 53 at 12).  The Court finds "it is reasonable to infer that in the course of their daily work Plaintiffs would have personal knowledge about whether other employees clocked in and clocked out for lunch breaks or were regularly unable to take a lunch break." *Myers*, 201 F. Supp. 3d at 894. Plaintiff provided testimony that Plaintiffs Watson, Peck, McKinzie, and Rosikhina all complained to their supervisors about their inability to take meal breaks.  (ECF No.

53 at 13-14). They claim that their supervisors, aware of the employees' unpaid meal breaks, indicated that nothing could be done to rectify the situation. (*Id*.) Again, the Court finds that "this is a practice of employees being on duty during their breaks" is one "of which individual employees could very well be aware through personal knowledge." *Myers*, 201 F. Supp. 3d at 895.

### F. Manageability

Defendants argue that the Court should deny conditional class certification because the proposed class would be unmanageable. Defendants claim that "the Court will be forced to conduct thousands of fact-intensive mini-trials concerning the unique facts of each individual's claim, including whether they regularly took meal breaks, whether they worked through their meal break, the amount of time they worked during their meal break, the dates on which they worked through their meal break, whether they entered a meal break cancellation, and whether they advised their supervisor that they worked through their meal break or their supervisor otherwise witnessed it." (ECF No. 47, 29-30). Defendants maintain that these "case-by-case" determinations make this action unsuitable for collective action. (ECF No. 47 at 30).

While recognizing Defendants' arguments, the Court finds no reason to deviate from its usual practice of addressing manageability at the second stage of the conditional certification process. *See Helmert v. Butterball, LLC*, No. 4:08CV00342 JLH, 2009 WL 5066759, at *6 (E.D. Ark. Dec. 15, 2009) (citing *Bouaphakeo v. Tyson Foods, Inc.*, 564 F.Supp. 2d 870, 892-93 (N.D. Iowa 2008); *Kautsch*, 2008 WL 294271, at *2; *Smith v. Heartland Auto. Servs., Inc.*, 404 F.Supp.2d 1144, 1150 (D. Minn. 2005) ("Courts consider three factors at this second stage: (1) the employment and factual settings of the plaintiffs; (2) the various defenses available to the defendants; and (3) considerations of fairness, procedure, and manageability.").

### G. Notice

Without specificity, Defendants object to the content, form and method of distribution of the Notice and ask the Court to order the parties to meet and confer prior to approving the Notice. (ECF No. 47-30). Plaintiff does not seem to respond to Defendants' nebulous Notice objections. (ECF No. 53, *passim*). Given the protracted nature of this litigation, the Court asks the parties to resolve their disputes regarding the Notice to the putative collective. The parties should submit their proposed Notice documents no later than January 13, 2023.

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff's Motion for Conditional Collective Certification and Court-Supervised Notice to Potential Opt-In Plaintiffs Pursuant to 29 U.S.C. § 216(b) (ECF No. 37) is **GRANTED**, in part. The Court conditionally certifies the following FLSA collective class: "All hourly-paid employees of the Defendants who were or are subject to the automatic meal break deduction policies at any time on or after three (3) years prior to the date on which the Court approves the collective certification." Defendants shall identify all putative members of the Collective by providing their names, last known addresses, dates and locations of employment, job titles, phone numbers, and e-mail addresses, in an electronic and importable format, such as an unrestricted Excel spreadsheet, within fourteen (14) calendar days of the entry of this Order. The Court postpones addressing the court-supervised Notice until the parties have properly brought this issue before the Court.

**IT IS FURTHER ORDERED** that the parties shall meet and confer regarding their issues related to the proposed Notice in this case. The parties shall provide a status report to the Court no later than **January 13, 2023**, identifying when the parties met to discuss and whether they have

reached an agreement on these issues. In the event that the parties cannot reach an agreement, the parties shall each submit briefs no later than **January 13, 2023**, outlining their positions.

Dated this 27th day of December, 2022.

*Ronnie L. White*
RONNIE L. WHITE
UNITED STATES DISTRICT JUDGE