UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| DANIELLE PECK, individually and on behalf of a class of others similarly situated, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | No. 4:21-cv-00834-AGF |
| MERCY HEALTH, MERCY HEALTH FOUNDATION, and MHM SUPPORT SERVICES, | ) ) ) ) ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

Plaintiff Danielle Peck brought this putative class and collective action in 2021, alleging that she and other similarly situated employees were deprived of wages through automatic deductions from their paychecks for meal breaks despite that Defendants knew they regularly worked through meal breaks, in violation of the Fair Labor Standards Act ("FLSA"), the Oklahoma Protection of Labor Act, and Oklahoma common law.[1]   ECF Nos. 1 and 23.   Following an unsuccessful mediation, Plaintiff moved to conditionally certify her FLSA claim as a collective action under the FLSA.   The Court granted that motion and conditionally certified an FLSA collective class consisting of:

> All hourly-paid employees of the Defendants who were or are subject to the automatic meal break deduction policies at any time on or after three (3) years prior to the date on which the Court approves the collective certification.

---

[1]    The matter was initially before Judge Ronnie L. White before being reassigned to the undersigned on January 22, 2024.

ECF No. 90 at 14.   Plaintiff never moved for certification of her state-law class claims.[2]

Following notice to hourly employees who worked in Missouri, Oklahoma, Arkansas, and Kansas, more than 3,700 individuals opted in to the FLSA collective action (the "Opt-In Plaintiffs").   The parties conducted extensive discovery, and Defendants now move to decertify the FLSA collective action.   After careful consideration, and for the reasons set forth below, the Court will grant Defendants' motion for decertification.

## BACKGROUND

Defendant Mercy Health is the parent corporation of hospitals, clinics, doctors' offices, and other healthcare providers primarily located in Missouri, Arkansas, Oklahoma and Kansas; Defendant MHM Support Services employs individuals who work at entities in the Mercy Health system.

During the relevant time period, Defendants have maintained written "Non-Exempt Rest and Meal Breaks" policies.   The written policies reflect Defendants' use of an automatic meal-break deduction mechanism in its timekeeping system.   Specifically, Defendants partnered with payroll software companies to automatically deduct time for meals after employees work five (5) consecutive hours and again after they work 15 consecutive hours into shift.   ECF No. 198 at 4.

---

[2]     Given the length of time that this case has been pending with no motion for class certification, the Court assumes that Plaintiff intends to proceed only on an individual basis with respect to her state-law claims.

The policies direct that when an employee performs any work during a meal period, the time must be paid and that, under no circumstances, are employees permitted to work off the clock.   The policies further provide that if an employees are required to perform any work duty while on a meal break or are otherwise unable to take a full meal break, they must be compensated for the meal break by entering a cancelation of the automatic deduction, which could be done directly through the timekeeping system or by submitting an exception form to a designated supervisor for such a cancelation.   *Id.* at 4-6; *see also* ECF No. 208 at 2.

Although the parties agree that Defendants' written policies throughout the relevant time period required employees to cancel the automatic deduction when working during a meal break and to be paid for any work performed during a meal break, the parties dispute whether Defendants complied with those policies.   Specifically, Plaintiff contends that she and the Opt-In Plaintiffs were subject to a uniform practice of Defendants discouraging cancelation of the automatic deduction and, therefore, failing to pay employees for work performed during meal breaks.

Plaintiff argues that this *de facto* policy-to-violate-the-policy was carried out by individual supervisors through various means, including (1) explicitly prohibiting employees from canceling deductions; (2) prohibiting employees to cancel deductions when a meal break was offered but not taken (for example, because no other employee was available to cover work duties); (3) more subtly discouraging cancelation of deductions by communicating how such cancelations would negatively affect metrics

- 3 -

such as budgets or performance evaluations; (4) not informing employees about the cancelation option or not training them on how to use it; or (5) in some cases, overriding employees' attempts to cancel the deduction because, for example, the cancelations were made too late or occurred too frequently. *See generally* ECF No. 198 at 13-26.

Defendants, on the other hand, argue that the only common policies in this case are their lawful written policies requiring that employees be paid for work performed during lunch breaks.   Defendants maintain that from December 15, 2019, to June 30, 2023, 61.41% of the Opt-In Plaintiffs affirmatively canceled at least one meal break deduction and that the 35 Opt-In Plaintiffs who were deposed[3] had timekeeping records reflecting widely varying cancellation rates, including some who cancelled a meal break deduction frequently.   *Id.* at 7; *see also* ECF No. 193-5, Defs.' Ex. 5, Sudibjo Decl.

Defendants further argue that the work settings, training, and meal break experiences of the Opt-In Plaintiffs varied significantly.   For example, Defendants present evidence that the Opt-In Plaintiffs occupy 339 different job positions at 238 different physical locations; approximately 46% of the Opt-In Plaintiffs worked in positions with no direct patient care responsibilities, versus 54% who provided direct patient care; and approximately 17% worked remotely versus 83% in person.   ECF No. 193 at 5-7.   Defendants argue that these differences demonstrate the need for individual analysis and, therefore, warrant decertification.

---

[3]   Defendants assert, and Plaintiff does not dispute, that 52 Opt-In Plaintiffs dismissed their claims upon being selected for deposition.   ECF No. 193 at 1.

Defendants also highlight the differences in the testimony of even the small sample of 35 Opt-In Plaintiffs who were deposed (less than 1% of the collective) with respect to whether and how frequently they canceled the automatic meal break deduction, why and under what circumstances they did so, whether their supervisors knew or should have known that they did not cancel the deduction despite working through their meal break, and whether and how they were trained to cancel the meal break deduction.   Even with respect to a single Opt-In Plaintiff, Defendants argue, his or her experience with the automatic meal break deduction may have differed depending on the particular department in which they worked.

For example, Defendants highlight the deposition testimony of Opt-In Plaintiff Thomas Ray, who worked as a licensed practical nurse in two different departments, the co-worker health department and the emergency room, in Oklahoma City.   ECF No. 193-39, Ray Dep. at 13:15-25.   Ray testified that taking an uninterrupted meal break while in the co-worker health department was "the exception rather than the rule" but that he did not recall being "allowed to" cancel a meal break deduction in that department. *Id.* at 21:13-15; 32:15-16.   By contrast, when he worked in the emergency room, he learned that he was allowed to cancel his automatically deducted meal breaks and from that point on, "if [he] didn't get a meal break then [he] would cancel."   *Id.* at 31:20-32:7.

Opt-In Plaintiff Charlene Powell, a registered nurse who worked in both the intensive care unit and hemodialysis units in St. Louis, likewise testified regarding differences between departments.   ECF No. 193-38, Powell Dep. at 14:16-23; 16:4-5.

- 5 -

Specifically, Powell testified that she had no problem with her meal break when she worked in the dialysis unit and that there was never an occasion in that unit when she worked during her lunch break and did not cancel the deduction.  *Id.* at 59:2-20.  But when she worked in intensive care, she would frequently need to assist a patient during a meal break and she did not always cancel the meal break deduction when she worked through the break, though she did cancel it on occasion.  *Id.* at 45:25-48:7.

Defendants argue that these differences demonstrate that individualized assessment is required to determine whether Defendants knew or should have known that uncompensated work was being performed, as required to state an FLSA claim; whether the Opt-In Plaintiffs were aware of Defendants' meal break policy and reported working through a meal break; whether each Opt-In Plaintiff worked more than 40 hours per week so as to be eligible to receive overtime pay; and whether each Opt-In Plaintiff's credibility can be undermined.

## **DISCUSSION**

**Legal Standard**

Section 216(b) of the FLSA allows named plaintiffs to sue "for and in behalf of . . . themselves and other employees similarly situated."  29 U.S.C. § 216(b).  The statute provides a procedure for plaintiffs to join suit by filing a written consent to become a party, but the statute does not prescribe any standard or procedure for the court to determine whether these plaintiffs are similarly situated.  Nevertheless, district courts in the Eighth Circuit generally have followed a two-step approach: first, a named plaintiff

seeks so-called "conditional certification," the sole purpose of which is to facilitate notice to the proposed class; second, typically after discovery, the defendant may move to decertify the collective action if the record reveals that the opt-in plaintiffs are not similarly situated. *See, e.g.*, *Getchman v. Pyramid Consulting, Inc.*, No. 4:16-cv-01208-CDP, 2017 WL 713034, at *4 (E.D. Mo. Feb. 23, 2017) (collecting cases).[4]

**<u>Similarly Situated</u>**

"Plaintiffs may be similarly situated when they suffer from a single, FLSA-violating policy, and when proof of that policy or of conduct in conformity with that policy proves a violation as to all the plaintiffs." *Bouaphakeo v. Tyson Foods, Inc.*, 765 F.3d 791, 796 (8th Cir. 2014), *aff'd*, 136 S. Ct. 1036 (2016). A court may consider "(1) disparate factual and employment settings of the individual plaintiffs; (2) the various defenses available to defendant which appear to be individual to each plaintiff; and (3) fairness and procedural considerations." *Id.*

After nearly five years of discovery, Plaintiff has failed to demonstrate that she and the Opt-In Plaintiffs are similarly situated. These 3,700+ individuals worked in multiple states, at different hospitals, holding different job titles in different departments,

---

[4]     Although the two-step practice has not been universally adopted among the circuits, the Eighth Circuit has not indicated any disapproval of its district courts' widespread adoption of the two-step practice, and the parties do not challenge that practice now. *E.g.*, *Cupp v. MHM Health Pros., LLC*, No. 4:23-CV-00071-SRC, 2024 WL 549974, at *2 (E.D. Mo. Feb. 12, 2024) (describing the circuit split in jurisprudence regarding the two-step practice, including other circuits which more "rigorously enforce" the FLSA's similarity requirement at the outset of litigation).

with different workloads and responsibilities, reported to different supervisors, and experienced different meal break practices.   The only uniform policy established in this case is Defendants' policy of imposing an automatic deduction of time allotted for a meal break.   But even Plaintiff does not dispute that such a policy is lawful under the FLSA, particularly where, as here, the policy requires employees to cancel the deduction if a break is not taken in order to be paid for all time worked.   *E.g.*, *Frye v. Baptist Mem'l Hosp., Inc.*, 495 F. App'x 669, 673 (6th Cir. 2012) ("[A]n automatic-deduction policy by itself comports with the FLSA, and thus cannot serve as the lone point of similarity supporting class certification.") (cleaned up and citations omitted).

Under the FLSA, an employee's "mealtime can constitute compensable work if the employee spends the time predominantly for the benefit of the employer, and the employer knew or should have known its employees performed such work."   *Micone v. Levering Reg'l Health Care Ctr., L.LC.*, 132 F.4th 1074, 1079 (8th Cir. 2025).   Although constructive knowledge is enough to prove an employer's liability, an employer may meet its obligation to ascertain employees' overtime work if it "establish[es] a reasonable process for an employee to report it."   *Id.*   In that case, "[i]f employees fail to follow that process, then an employer ordinarily is not deemed to have constructive knowledge of overtime work."   *Id.*

In *Micone*, the Department of Labor challenged an automatic meal break deduction policy under the FLSA, and the Eighth Circuit held that there was sufficient evidence regarding whether the employer had constructive knowledge of unpaid work

performed during lunch breaks so as to survive summary judgment.  *Id.* at 1080. *Micone* was not a collective action, but Plaintiff relies on its holding that "the mere existence of a policy or process for reporting overtime work is not dispositive.  An employer's process must be reasonable, which at a minimum requires employees to know of the policy and how to use it."  *Id.*  True enough.  However, in *Micone*, the Eighth Circuit relied on evidence that no employee during the relevant time period had ever used the exception to the automatic meal break deduction and, based on such evidence, concluded that it could be reasonably inferred that the employer had not effectively communicated the exception process to its employees.  *Id.*

Here, by contrast, Plaintiff's own data shows that approximately 13.2% (nearly 500) of the Opt-in Plaintiffs, including some deposed by Defendants, reported that they cancelled the automatic deduction frequently and, on average, roughly once every other shift.  *See* ECF No. 198-1, Pl.'s Ex. 1 at 6-8.  While Plaintiff relies on this data to argue that a larger portion of the Opt-In Plaintiffs canceled the automatic deduction more rarely—according to Plaintiff, on average once every 38.61 shifts—Plaintiff's data certainly distinguishes this case from *Micone*, and suggests that an appreciable portion of the Opt-In Plaintiffs knew how to and did report time worked during meal breaks.

More importantly, Plaintiff's evidence with respect to how frequently the Opt-In Plaintiffs canceled the automatic deduction and why they did or did not do so, only highlights the significant differences among the Opt-In Plaintiffs.  For example, to support her contention that Opt-In Plaintiffs were not adequately informed or trained

regarding how to cancel the automatic deduction, Plaintiff points to the questionnaires that roughly 721 of the 3,700+ Opt-In Plaintiffs completed and notes that 415 of these questionnaire respondents checked a box indicating that they did not recall being informed of the process to reverse the automatic deduction.   But Plaintiff fails to note the other 306 respondents did not check such box (suggesting that they were so informed), and the Court has no clue how the other 2,700+ Opt-In Plaintiffs who did not complete the questionnaire would have responded.   ECF No. 198 at 13; Pl.'s Ex. C (summarizing questionnaire responses).   Thus, the questionnaire responses and differences therein only demonstrate that the Opt-In Plaintiffs are not similarly situated in this regard and weigh against collective action certification.   *See, e.g.*, *Frye*, 495 F. App'x at 672-73 (holding that evidence "showing that some opt-in plaintiffs did not know their compensation rights with regard to interrupted meal breaks, others voluntarily declined to report work performed during their lunch breaks, and still others lunched at their workstation without realizing that it entitled them to compensation," is "perhaps indicative of individual FLSA violations, [but] fails to demonstrate similarly situated plaintiffs experiencing a common FLSA injury"); *cf. Burris v. Baxter Cnty. Reg'l Hosp., Inc.*, No. 3:23-CV-3008, 2025 WL 242203, at *3-4 (W.D. Ark. Jan. 19, 2025) (denying decertification where "[o]f the six Plaintiffs who were deposed, all six testified that they felt or were told that *some* break, even if it was less than thirty minutes, counted as a meal break," and "where HR only issued seven corrections in a five-year period across approximately 2,000 employees, a number that seems surprisingly low in light of the frequency with which

Plaintiffs claim their meals were interrupted") (emphasis in original).

As noted by Defendants, the small sample of Opt-In Plaintiffs whose depositions were taken had widely varying experiences in terms of both their experiences with the automatic meal break deduction as well as what, if anything, their supervisors knew about those experiences.  Some testified that they did not inform any supervisor when they missed a meal break without canceling the deduction; some testified they did not cancel the deduction because of their own beliefs about company culture, despite company policy instructing them otherwise; some testified that they canceled the deduction some but not all of the time; and others testified that they were explicitly instructed not to cancel deductions.  *See* ECF No. 193-7.  Even with respect to a single Opt-In Plaintiff, his or her experience appears to have differed depending on his or her particular unit assignment or supervisor, as the deposition testimony of Opt-In Plaintiffs like Ray and Powell, discussed above, demonstrates.  *See Frye*, 495 F. App'x at 673 (6th Cir. 2012) (holding that where "the opt-in plaintiffs had different jobs, even within a department, and that different departments used different exception procedures to ensure compensation for work performed during meal breaks[,] [such] differences overwhelm [the] alleged similarities" and warrant decertification).

Plaintiff attempts to downplay these differences by arguing that the directive to discourage cancelations of the deduction came from Defendants so as to constitute a *de facto* corporate policy.  But the only evidence Plaintiff offers on this point is emails from a few individual supervisors; there is no evidence those individual supervisors were

- 11 -

acting pursuant to Defendants' directive.[5]   And the fact that more than half of the Opt-In Plaintiffs canceled the meal break deduction at least once during the relevant period, plus Plaintiff's own admission that some 13% of the Opt-In Plaintiffs frequently did so, weighs against a finding that a corporate directive to discourage the practice existed. *See, e.g.*, *Hamilton v. Diversicare Leasing Corp.*, No. 1:12-CV-1069, 2014 WL 4955799, at *4 (W.D. Ark. Oct. 1, 2014) (holding that decertification was warranted where there was "no direct evidence of a de facto policy to not compensate employees for missed meal breaks or to even discourage employees from seeking compensation" and, instead, "[t]he deposition testimony of the named Plaintiffs reveals that their experiences with the policy varied greatly"); *Desilva v. N. Shore-Long Island Jewish Health Sys., Inc.*, 27 F. Supp. 3d 313, 327 (E.D.N.Y. 2014) (same)

Plaintiff also argues that the variation in employee experiences goes to the merits of those employees' claims, rather than to the question of whether the employees are similarly situated.   Specifically, Plaintiff argues that "if there is conflicting evidence, the

---

[5]   For example, Plaintiff highlights the deposition testimony of JoEllen Gettle, an Operations Supervisor for the ER at Mercy's Springfield location, who sent emails to employees indicating the employees should not cancel the automatic deduction when they were offered lunch even if they did not take a lunch break, "as the effort has been made to accommodate" the employees.   ECF No. 198 at 14 (quoting Gettle deposition). Plaintiff further notes Gettle's testimony indicating that she sent such emails at the direction of her "manager," though she did not further describe or identify such manager. *Id.* at 14-15; *see also* ECF No. 199-8, Pl.'s Ex. 10, Gettle dep.   At best, this evidence might reflect an unwritten policy at a single location, and perhaps only a single department within that location.   There is no evidence that such policy was instituted at the direction of the corporate Defendants such that it permeated the many hundreds of locations and departments in which the broad collective here served.

trier of fact determines the existence, or nonexistence, of a policy that violates the FLSA." ECF No. 198 at 32. In other words, Plaintiff seems to suggest that the ultimate questions of whether a *de facto* policy existed and how it operated can be answered at trial. In support of that proposition, Plaintiff cites *Campbell v. City of Los Angeles*, 903 F.3d 1090, 1119 (9th Cir. 2018), which held that in a case where decertification of a collective overlaps with the merits of the underlying FLSA claims, courts should apply the summary judgment standard in evaluating a post-discovery motion for decertification.

As an initial matter, *Campbell* is not binding on this Court, and the Eighth Circuit has not indicated its adherence to *Campbell*'s approach. Rather, Eighth Circuit has indicated the question of whether FLSA plaintiffs are similarly situated must be addressed before allowing the plaintiffs to proceed as a collective under § 216 of the FLSA. *See Bouaphakeo*, 765 F.3d at 796 (reviewing evidence to determine whether plaintiffs were similarly situated before deciding whether an FLSA collective was properly certified under § 216). Because Plaintiff's only theory to prove that she and the Opt-In Plaintiffs are similarly situated is that they were all subject to a *de facto* policy, waiting until trial to decide whether a *de facto* policy existed would seem to shirk the Court's duty under § 216.

But even if the Court took the approach of the Ninth Circuit in *Campbell*, it would still find that decertification was warranted. In *Campbell*, as here, the FLSA claims rested on a theory that "there exist[ed] a kind of tacit policy that operate[d] top-down, such that an inference may be drawn that the policy applie[d] Department-wide."

- 13 -

*Campbell*, 903 F.3d at 1120.   But the only evidence of that tacit policy offered at the decertification stage was "a mass of individual declarations" speaking of "immediate supervisors at discrete worksites" and "variable practices variably applied," rather than a uniform policy directed by the defendant's leadership.  *Id.*  On such a record, the appellate court concluded that "no reasonable trier of fact could conclude that the City fostered or tolerated a tacit policy of noncompliance" and that the collective action was therefore correctly decertified.  *Id.* at 1121.

The same is true here.   On the record before the Court, there is no basis to find a uniform policy, proof of which would prove an FLSA violation as to each member of the collective.  *Bouaphakeo*, 765 F.3d at 796.   Thus, decertification is required.[6]

**Plaintiff's Proposed Alternatives to Decertification**

In a few sparse paragraphs at the end of her brief, Plaintiff suggests that if the Court concludes that the collective as currently defined cannot be certified, the Court should "subdivide the current Collective into subclasses by job type, work location, or

---

[6]    Plaintiff also cites a Department of Labor investigation into the automatic meal break deductions at a single department of a single location—the public safety department at Mercy Hospital St. Louis.   Plaintiff notes that a settlement of that investigation led to Defendants compensating 61 security officers for work performed during the automatically deducted meal breaks.   ECF No. 198 at 29.   Though it is not clear why Plaintiff cites the investigation, to the extent she is relying on it to support certification of the collective at issue in this case, the Court agrees with Defendants that "[t]his narrow investigation and resolution, limited to a single department at a single facility, does not demonstrate any systemwide violation or uniform application of any problematic or unlawful pay policy" but rather "illustrates that if there any meal break concerns, they are localized and department-specific."   ECF No. 208 at 14.

- 14 -

any other subclasses the Court deems appropriate," rather than decertify the collective. ECF No. 198 at 39.   But Plaintiff has not proposed any specific subclass that consists of similarly situated individuals.   Plaintiff's alternative suggestion that the Court narrow the collective to exclude "outlier opt-in Plaintiffs whose deduction-cancellation frequency exceeded 18.12%," *id.*, is likewise unavailing because Plaintiff has not adequately explained how narrowing the collective in this way would result in a similarly-situated collective or would otherwise cure the deficiencies discussed above.[7]   The Court will not attempt to create a sub-collective on this record.

## CONCLUSION

For the foregoing reasons, the Court will grant Defendants' motion to decertify the FLSA collective action.   The named Plaintiff's individual claims will remain pending before this Court, and the Court will dismiss the Opt-In Plaintiffs' claims without prejudice.   At Plaintiff's request, which Defendants have not opposed, and to avoid prejudice to those Opt-In Plaintiffs who wish to file individual lawsuits, the Court will also invoke its equitable powers to toll the applicable statute of limitations for 60 days after entry of this Memorandum and Order.   *See Proctor v. Allsups Convenience Stores, Inc.*, 250 F.R.D. 278, 284 (N.D. Tex. 2008) (applying similar equitable tolling).

---

[7]   For example, Plaintiff does not suggest that these so-called "outlier" Opt-In Plaintiffs who frequently canceled the automatic deduction all came from same department or performed the same job such that the Court could easily carve out that department or job classification.   And even if such a carve-out were possible, the Court is not convinced there would be sufficient uniformity among the remaining Opt-In Plaintiffs to allow them to proceed collectively.

- 15 -

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' motion to decertify the conditionally certified FLSA class is **GRANTED**.   ECF No. 192.

**IT IS FURTHER ORDERED** that the claims of the Plaintiffs who have opted in to the collective action are **DISMISSED without prejudice**, such that only the claims of named Plaintiff Danielle Peck remain pending before the Court.

**IT IS FURTHER ORDERED** that the applicable statute of limitations for the FLSA claims of the Plaintiffs who have opted in to the collective action is tolled for a period of **60 days** from the date of this Memorandum and Order.

**IT IS FURTHER ORDERED** that Plaintiffs' counsel shall promptly notify the Plaintiffs who have opted in to the collective action of this Memorandum and Order, and shall file a notice with the Court confirming that they have done so.

**IT IS FURTHER ORDERED** that within **14 days** of the date of this Memorandum and Order, the parties shall file a joint proposed amended schedule for the remainder of the litigation, including a proposed trial date.

_____
AUDREY G. FLEISSIG
UNITED STATES DISTRICT JUDGE

Dated this 21st day of April, 2026.